RENDERED: MARCH 19, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0279-MR

KENTUCKY RETIREMENT SYSTEMS;
BOARD OF TRUSTEES OF THE KENTUCKY
RETIREMENT SYSTEMS; BOARD OF
DIRECTORS OF THE KENTUCKY
RETIREMENT SYSTEMS; DISABILITY
APPEALS COMMITTEE OF THE KENTUCKY
RETIREMENT SYSTEMS; AND KENTUCKY
EMPLOYEES RETIREMENT SYSTEM                    APPELLANTS


                    APPEAL FROM FRANKLIN CIRCUIT COURT
v.                  HONORABLE PHILLIP J. SHEPHERD, JUDGE
                    ACTION NO. 16-CI-01322


SANDRA JUANITA MOSS STEWART,
INDIVIDUALLY, AND JERE DEE HOPSON,
AS ADMINISTRATOR OF THE ESTATE
OF JIMMIE LEONARD STEWART                       APPELLEES


                              OPINION
                    REVERSING AND REMANDING

                        ** ** ** ** **

BEFORE:  ACREE, MCNEILL, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE: The Kentucky Retirement Systems (hereinafter referred to as Appellant), and others, appeal from an order of the Franklin Circuit Court which overturned a decision of the Appellant denying disability retirement benefits to Jimmie Stewart. Appellant argues that the circuit court deviated from its standard of review and that Mr. Stewart was properly denied disability retirement benefits. We agree with Appellant and reverse and remand.

## FACTS AND PROCEDURAL HISTORY

This action arises from an application for disability benefits submitted by Mr. Stewart. Sandra Juanita Moss Stewart and Jere Dee Hopson continued the action after Mr. Stewart's passing during the pendency of this case. The underlying facts of this case are not in dispute. At the time of his disability retirement request, Mr. Stewart was employed as a Youth Worker II by the Kentucky Justice and Public Safety Cabinet. He began his employment on February 16, 1989. Mr. Stewart was required to supervise males under the age of 18 who had been committed to the custody of the state. He supervised recreation activities, meal time, and sleep. The job also occasionally required him to restrain individuals who had become out of control.

On April 4, 2000, Mr. Stewart requested reasonable accommodations due to the side effects of his blood pressure medication. The Cabinet informed Mr. Stewart that reasonable accommodations were not available for his position. On

April 13, 2000, Mr. Stewart applied for disability retirement benefits. These benefits were denied and Mr. Stewart took no additional steps to appeal the denial.

Mr. Stewart had a pacemaker installed on March 31, 2005, and had an adjustment to the pacemaker on June 15, 2005. Mr. Stewart's last day of paid employment was on July 4, 2005. In October of 2005, Mr. Stewart had a brain aneurysm. The aneurysm was repaired, but it resulted in third nerve palsy, which caused drooping and other problems with his right eye. In addition, the aneurysm also caused Mr. Stewart to have difficulty with walking. Mr. Stewart filed a new application for disability retirement benefits on December 5, 2005. He listed his third nerve palsy as the reason for disability. His application was denied and he requested a hearing. A hearing was held in July of 2007. Around that same time, Mr. Stewart amended his disability retirement application to include hypertension, atrial fibrillation status post pacemaker placement with ablation for tachycardia/bradycardia syndrome, and diabetes mellitus type 2 as additional reasons for seeking disability retirement benefits.

Mr. Stewart was the only person to testify at the hearing, but multiple medical records were introduced into evidence. Ultimately, the hearing officer was not persuaded that Mr. Stewart was entitled to disability retirement benefits. The

hearing officer classified Mr. Stewart's work duties as "light work"[1] and found that there was no objective medical evidence to support the claim that hypertension, diabetes, or the pacemaker prevented Mr. Stewart from fulfilling his work duties. The hearing officer also concluded that the aneurysm and associated palsy could not be considered because they occurred after his last date of paid employment. The Board of Trustees of the Appellant adopted the hearing officer's recommended order in its entirety.

Mr. Stewart then appealed to the Franklin Circuit Court. The court reversed because it found that the Board of Trustees failed to consider the cumulative disabling effect of Mr. Stewart's medical conditions by only viewing them individually. The court also believed the "light work" designation was erroneous and that the job classification should be "heavy work"[2] or "very heavy work."[3] The court came to this conclusion because Mr. Stewart would sometimes have to restrain individuals who sometimes weighed up to 200 pounds. The court reversed the decision to deny Mr. Stewart disability retirement benefits. Appellant then appealed to a previous panel of this Court.

---

[1] The classification of a state employees' job duties for the purposes of disability retirement benefits is governed by Kentucky Revised Statutes (KRS) 61.600(5)(c). Light work is defined at KRS 61.600(5)(c)2.

[2] Defined at KRS 61.600(5)(c)4.

[3] Defined at KRS 61.600(5)(c)5.

This Court then affirmed in part and reversed. The Court agreed with the circuit court that the "light work" designation was erroneous and held that Mr. Stewart was engaged in "very heavy work." The Court declined to weigh in on any other issues on appeal because it believed the "light work" designation poisoned the entire order from Appellant. The Court remanded with instructions for Appellant to reconsider Mr. Stewart's application and determine if he was disabled from performing "very heavy work."

On remand, a new hearing officer reviewed the case. A new recommended order was entered on May 16, 2016. The new order acknowledged the remand and indicated Mr. Stewart's classification was "very heavy work." It then discussed Mr. Stewart's medical records and concluded that he was not entitled to disability retirement benefits. Again, the hearing officer found that the aneurysm and palsy could not be considered because it occurred after his last day of paid employment. The hearing officer also found that Mr. Stewart's hypertension, diabetes, and pacemaker, each individually and collectively, did not incapacitate him. The Board of Trustees again adopted the recommended order in total.

Prior to the Board's final order, Mr. Stewart died. Mr. Stewart's estate was then allowed to intervene and appealed to the Franklin Circuit Court. The court again reversed the Board of Trustees decision and held that Mr. Stewart

was permanently incapacitated from performing "very heavy work." The court held that the Board of Trustees failed to examine the case with a "very heavy work" designation. The court also found that the medical records indicated Mr. Stewart's atrial fibrillation was so bad that it required a pacemaker and that his hypertension was out of control. The court held that these conditions, along with his diabetes, supported the conclusion that Mr. Stewart could not perform "very heavy work," like restraining 200-pound juveniles when they became unruly. This appeal followed.

## ANALYSIS

> Upon review of an administrative agency's adjudicatory decision, an appeal court's authority is somewhat limited. The judicial standard of review . . . is whether the [] findings of fact were supported by substantial evidence and whether the agency correctly applied the law to the facts. Substantial evidence is defined as evidence, taken alone or in light of all the evidence, that has sufficient probative value to induce conviction in the minds of reasonable people. If there is substantial evidence to support the agency's findings, a court must defer to that finding even though there is evidence to the contrary. A court may not substitute its opinion as to the credibility of the witnesses, the weight given the evidence, or the inferences to be drawn from the evidence. A court's function in administrative matters is one of review, not reinterpretation.

*Thompson v. Kentucky Unemployment Ins. Comm'n*, 85 S.W.3d 621, 624 (Ky. App. 2002) (footnotes and citations omitted). "[A] reviewing court, whether it be one of the circuit courts, the Court of Appeals, or [the Kentucky Supreme Court],

should refrain from reversing or overturning an administrative agency's decision simply because it does not agree with the agency's wisdom." *Kentucky Unemployment Ins. Comm'n v. Landmark Community Newspapers of Kentucky, Inc.*, 91 S.W.3d 575, 582 (Ky. 2002) (citation omitted).

> The claimant bears the burden of proof and risk of persuasion before the board. If he succeeds in his burden and an adverse party appeals to the circuit court, the question before the court is whether the decision of the board is supported by substantial evidence. On the other hand, if the claimant is unsuccessful before the board, and he himself appeals to the circuit court, the question before the court is whether the evidence was so overwhelming, upon consideration of the entire record, as to have compelled a finding in his favor.

*Wolf Creek Collieries v. Crum*, 673 S.W.2d 735, 736 (Ky. App. 1984).

With the above standard of review in mind, we will now review Appellant's argument. Appellant argues that the circuit court ignored the standard of review, reweighed the evidence, and ignored the substantial evidence in the record supporting Appellant's decision. We agree. We believe the hearing officer and the Board of Trustees examined all the issues and set forth substantial evidence to deny Mr. Stewart's disability retirement benefits.

To receive disability retirement benefits, an applicant must meet certain statutory requirements. KRS 61.600 states in pertinent part:

> (3) Upon the examination of the objective medical evidence by licensed physicians pursuant to KRS 61.665, it shall be determined that:

(a) The person, since his last day of paid employment, has been mentally or physically incapacitated to perform the job, or jobs of like duties, from which he received his last paid employment. In determining whether the person may return to a job of like duties, any reasonable accommodation by the employer . . . shall be considered;

(b) The incapacity is a result of bodily injury, mental illness, or disease. For purposes of this section, "injury" means any physical harm or damage to the human organism other than disease or mental illness;

(c) The incapacity is deemed to be permanent; and

(d) The incapacity does not result directly or indirectly from bodily injury, mental illness, disease, or condition which pre-existed membership in the system or reemployment, whichever is most recent. . . .

. . .

(5) (a) 1. An incapacity shall be deemed to be permanent if it is expected to result in death or can be expected to last for a continuous period of not less than twelve (12) months from the person's last day of paid employment in a regular full-time position.

2. The determination of a permanent incapacity shall be based on the medical evidence contained in the member's file and the member's residual functional capacity and physical exertion requirements.

(b) The person's residual functional capacity shall be the person's capacity for work activity on a regular and continuing basis. The person's physical ability shall be assessed in light of the severity of the person's physical, mental, and other impairments. The person's ability to walk, stand, carry, push, pull, reach, handle, and other physical functions shall be considered with regard to

physical impairments. The person's ability to understand, remember, and carry out instructions and respond appropriately to supervision, coworkers, and work pressures in a work setting shall be considered with regard to mental impairments. Other impairments, including skin impairments, epilepsy, visual sensory impairments, postural and manipulative limitations, and environmental restrictions, shall be considered in conjunction with the person's physical and mental impairments to determine residual functional capacity.

(c) The person's physical exertion requirements shall be determined based on the following standards:

1. Sedentary work shall be work that involves lifting no more than ten (10) pounds at a time and occasionally lifting or carrying articles such as large files, ledgers, and small tools. Although a sedentary job primarily involves sitting, occasional walking and standing may also be required in the performance of duties.

2. Light work shall be work that involves lifting no more than twenty (20) pounds at a time with frequent lifting or carrying of objects weighing up to ten (10) pounds. A job shall be in this category if lifting is infrequently required but walking and standing are frequently required, or if the job primarily requires sitting with pushing and pulling of arm or leg controls. If the person has the ability to perform substantially all of these activities, the person shall be deemed capable of light work. A person deemed capable of light work shall be deemed capable of sedentary work unless the person has additional limitations such as the loss of fine dexterity or inability to sit for long periods.

3. Medium work shall be work that involves lifting no more than fifty (50) pounds at a time with frequent lifting or carrying of objects weighing up

to twenty-five (25) pounds. If the person is deemed capable of medium work, the person shall be deemed capable of light and sedentary work.

4. Heavy work shall be work that involves lifting no more than one hundred (100) pounds at a time with frequent lifting or carrying of objects weighing up to fifty (50) pounds. If the person is deemed capable of heavy work, the person shall also be deemed capable of medium, light, and sedentary work.

5. Very heavy work shall be work that involves lifting objects weighing more than one hundred (100) pounds at a time with frequent lifting or carrying of objects weighing fifty (50) or more pounds. If the person is deemed capable of very heavy work, the person shall be deemed capable of heavy, medium, light, and sedentary work.

We believe the circuit court made an erroneous finding, impermissibly reweighed the evidence, and ignored the substantial evidence supporting the Board of Trustee's decision. First, the circuit court found that the hearing officer and Board failed to analyze Mr. Stewart's alleged disability from a "very heavy work" occupation. Second, the circuit court held that there was no objective medical evidence to support the Board of Trustee's decision. The court then went on to list some of the medical evidence submitted and held that it indicated Mr. Stewart was incapacitated from his job. Third, the court ignored the medical evidence listed by the hearing officer in the recommended order.

-10-

As for the finding that the hearing officer and Board of Trustees did not consider the "very heavy work" classification, this finding is erroneous. On pages 4 and 6 of the recommended order, adopted in full by the Board of Trustees, the "very heavy work" classification is mentioned.

Additionally, the recommended order set forth substantial objective medical evidence to support the denial of benefits. We will discuss each of Mr. Stewart's ailments, beginning with the aneurysm and palsy. The recommended order stated that the aneurysm and palsy could not be considered because they were not present or incapacitating on the last day of paid employment. The hearing officer relied on the unpublished cases of *Robinson v. Kentucky Retirement Systems*, No. 2014-CA-000152-MR, 2015 WL 1433497 (Ky. App. Mar. 27, 2015), and *Rains v. Kentucky Retirement Systems*, No. 2010-CA-000441-MR, 2011 WL 2693972 (Ky. App. July 8, 2011),[4] to support this conclusion. These cases hold that, pursuant to KRS 61.600, for an incapacitation to be deemed permanent, it had to have been present on the last day of paid employment. This was a correct decision by the hearing officer.

> The purpose of disability retirement benefits is to provide an eligible employee with enhanced benefits based on a physical or mental incapacity which permanently disables the employee from performing his or her job duties, even with reasonable accommodation. By

---

[4] These cases are unpublished, but we find them persuasive and cite to them pursuant to Kentucky Rules of Civil Procedure (CR) 76.28(4)(c).

-11-

definition, an incapacity which becomes totally disabling after the employee's last day of paid employment cannot be the reason for the incapacity. The statutory scheme supports this conclusion by requiring proof that the incapacity be permanent and by defining permanent incapacity as an incapacity which can be expected to last for at least twelve months from the person's last day of paid employment. When read in context, the phrase "since the last day of paid employment" clearly anticipates that the totally disabling condition exists from the last day of paid employment forward.

*Rains*, 2011 WL 2693972 at \*2.

Mr. Stewart's last day of paid employment was July 4, 2005, and the aneurysm and palsy did not present themselves until the end of October of 2005. Since the aneurysm and palsy did not occur until after Mr. Stewart's last day of paid employment, they were properly disregarded.

As for Mr. Stewart's hypertension, the recommended order cites to two medical records from 1988 and three from 2005. The 1988 records show the beginning of Mr. Stewart's blood pressure problems and show that he was put on blood pressure medication. The first record from 2005 is dated April 1, 2005. This record indicates Mr. Stewart's blood pressure had been high, but was "relatively well controlled" with medication and that Mr. Stewart could return to his previous activities "as tolerated." The next record is dated November 11, 2005. It shows a very high blood pressure management, but a note states that his blood pressure could be controlled "[w]ith some difficulty." The last 2005 record is

-12-

dated November 23, 2005. This record indicated that Mr. Stewart's blood pressure was not as high as a previous visit, but needed to be rechecked at another date. While these records show that Mr. Stewart's blood pressure was high on multiple dates, they also show that it could be managed with medication. The records do not show that his high blood pressure issue was incapacitating.

We now move on to Mr. Stewart's heart condition and pacemaker. In March of 2005, Mr. Stewart had a pacemaker installed due to tachy-brady syndrome[5] and chronic atrial fibrillation.[6] Medical records cited by the recommended order indicated that the pacemaker procedure went well and there were no complications. On June 15, 2005, Mr. Stewart underwent an ablation[7] and adjustment to the pacemaker. He was discharged the same day with no instructions regarding his activity. On February 1, 2006, Mr. Stewart was admitted to the hospital with chest pain. He was discharged on February 3, 2006, and the discharge summary indicated his pacemaker was working properly and he was to resume his regular activities.[8] These records indicate that Mr. Stewart's heart

---

[5] A syndrome where the heart sometimes beats too fast and sometimes too slow.

[6] A condition where the heart beats in an irregular manner.

[7] A process where abnormal heart tissue is destroyed.

[8] The medical records are not clear as to what was causing these chest pains.

problems were being managed by the pacemaker, medication, and doctor visits. They do not show that his heart problem was incapacitating.

Finally, the medical records cited by the hearing officer regarding Mr. Stewart's diabetes indicate his diabetes began in 2001 and was being managed with medication. There was no evidence that it was incapacitating.

In addition, we note that the hearing officer considered these medical issues individually and collectively, contrary to Appellees' claim. This collective, whole person consideration was noted multiple times in the recommended order.

## CONCLUSION

The medical records filed in this case, all of which this Court reviewed, indicate that Mr. Stewart was likely permanently incapacitated and disabled due to his aneurysm and palsy; however, as discussed above, these conditions could not be considered due to them occurring after his last day of paid employment. The medical records relied on by Appellant regarding his other medical issues indicate that they were being managed by medication and the pacemaker. While it is clear that Mr. Stewart was still having some problems with his heart, there was substantial evidence to indicate he was not permanently incapacitated from his job. The circuit court erred in reweighing the evidence in this case; therefore, we reverse and remand. On remand, the circuit court shall affirm the order of Appellant denying Mr. Stewart disability retirement benefits.

-14-

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Kevin Edelman
Frankfort, Kentucky

BRIEF FOR APPELLEES:

James P. Benassi
Louisville, Kentucky